FILED
11/9/2026
AW
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

1:26-cr-00584
Judge Sunil R. Harjani
Magistrate Judge Karyn L. Bass Ehler
RANDOM / Cat. 4

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>REBECCA SANCHEZ | Case No.<br><br>Violation: Title 18, United States Code, Section 1343 |

**COUNTS ONE THROUGH FIVE**

The SPECIAL OCTOBER 2026 GRAND JURY charges:

1. At times material to this indictment:

a. Defendant REBECCA SANCHEZ was a Senior Policyowner Representative at Company A. Company A was headquartered in Glenview, Illinois and sold life insurance policies. SANCHEZ's responsibilities included, among other things, auditing monetary payments to life insurance policyholders who were entitled to payouts of insurance proceeds or partial or whole refunds of premiums paid for life insurance policies.

b. Individual B was an associate of SANCHEZ, who was not a policyholder, payee, or employee of Company A.

2. Beginning in or around March 2022, and continuing until in or around May 2024, in the Northern District of Illinois, Eastern Division, and elsewhere,

REBECCA SANCHEZ,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud Company A, and others, and to obtain money and property of

Company A and others by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

3. It was part of the scheme that SANCHEZ fraudulently used her position as Senior Policyowner Representative at Company A to divert payments intended for life insurance policyholders and payees to Individual B, knowing that Individual B would direct portions of the fraudulently obtained money to SANCHEZ's use and benefit. As a result of the scheme, SANCHEZ misappropriated at least $425,639.87 from Company A, which funds were intended for life insurance policyholders and payees.

4. It was further part of the scheme that, when SANCHEZ received returned checks issued by Company A intended for life insurance policyholders and payees, SANCHEZ made changes in Company A's internal systems, including changing the payee name to Individual B and converting identifying information of the intended payee to Individual B's identifying information knowing that the funds SANCHEZ directed to Individual B would be split between SANCHEZ and Individual B rather than the legitimate policyholders and/or payees of Company A.

5. It was further part of the scheme that SANCHEZ voided checks to legitimate intended payees and/or policyholders of Company A and reissued such checks to Individual B, falsely representing to Company A that those funds were legitimate payments to policyholders and/or payees of Company A, when, in truth,

they were funds diverted to Individual B for the benefit of SANCHEZ and Individual B.

6. It was further part of the scheme that SANCHEZ used Company A's internal systems to restore previously surrendered policies, then entered false information identifying Individual B as the payee, re-surrendered the policy, and caused checks to be generated to Individual B that falsely represented the payments as legitimate payments from Company A for the surrender of the policy, when, in truth, they were funds diverted to Individual B for the benefit of SANCHEZ and Individual B.

7. It was further part of the scheme that SANCHEZ entered false information in Company A's internal systems regarding the status of refund payments to legitimate policyholders and/or payees of Company A, including information regarding whether a refund to which the policyholder and/or payee was entitled had already been paid, so that she could generate checks to Individual B that falsely appeared to be legitimate refund payments to policyholders and/or payees of Company A when, in truth, they were funds diverted to Individual B for the benefit of SANCHEZ and Individual B.

8. It was further part of the scheme that Individual B deposited or caused to be deposited the Company A checks into personal bank accounts at JP Morgan Chase that he controlled and then electronically transferred approximately half of

the value of each Company A check to accounts controlled by SANCHEZ at Fifth Third Bank using Zelle.

9. It was further part of the scheme that SANCHEZ converted the funds she fraudulently diverted from Company A to her own use by withdrawing or spending the money that was misappropriated from Company A.

10. It was further part of the scheme that SANCHEZ misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence, purpose, and acts done in furtherance of the scheme.

11. On or about the dates set forth below, at Glenview, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant REBECCA SANCHEZ, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, certain Zelle transfers in the amounts listed below from a JP Morgan Chase account ending in -1701 to a Fifth Third account ending in -9500, which transactions were processed through servers located outside the State of Illinois, each such wire communication constituting a separate count:

| **Count** | **On or about date** | **Amount** |
|---|---|---|
| One | May 7, 2022 | $2,500.00 |
| Two | January 20, 2023 | $2,134.00 |
| Three | July 27, 2023 | $4,833.05 |
| Four | December 23, 2023 | $5,000.00 |
| Five | May 29, 2024 | $2,919.92 |

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The SPECIAL OCTOBER 2026 GRAND JURY further alleges:

1. Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in this Indictment, defendant REBECCA SANCHEZ shall forfeit to the United States any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. The property to be forfeited includes, but is not limited to, a personal money judgment in the amount of approximately $425,639.87.

3. If any of the property described above, as a result of any act or omission by defendant: cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

______________________________
FOREPERSON

______________________________
UNITED STATES ATTORNEY